1  **FIDELITY NATIONAL LAW GROUP**
   SHERI M. KANESAKA (SBN 240053)
2  4 Executive Circle, Suite 270
   Irvine, California 92614
3  Telephone: (949) 255-9973
   Facsimile: (213) 438-4417
4  Email: Sheri.Kanesaka@fnf.com

5  Attorneys for Plaintiff
   Federal National Mortgage Association
6

7

8

9              **UNITED STATES DISTRICT COURT**

10           **SOUTHERN DISTRICT OF CALIFORNIA**

11

12 FEDERAL NATIONAL MORTGAGE          CASE NO.   **'21 CV 615   CAB JLB**
   ASSOCIATION,
13                                     Assigned to:
                 Plaintiff,
14                                     **COMPLAINT FOR:**
          vs.
15                                     **(1)  DECLARATORY RELIEF (12 U.S.C.**
   GULF HARBOUR INVESTMENTS                **§ 4617(j)(3));**
16 CORPORATION; AFFINIA DEFAULT
   SERVICES, LLC; ALL PERSONS         **(2)  DECLARATORY RELIEF (DEED**
17 UNKNOWN, CLAIMING ANY LEGAL OR          **OF TRUST VOID);**
   EQUITABLE RIGHT, TITLE, ESTATE,
18 LIEN, OR INTEREST IN THE PROPERTY  **(3)  QUIET TITLE;**
   DESCRIBED IN THE COMPLAINT
19 ADVERSE TO PLAINTIFF'S TITLE, OR   **(4)  EQUITABLE SUBROGATION TO**
   ANY CLOUD UPON PLAINTIFF'S TITLE        **IMPRESS EQUITABLE LIEN; and**
20 THERETO; DOES 1 through 50, inclusive,
                                       **(5)  INJUNCTIVE RELIEF**
21               Defendants.

22

23

24

25

26

27

28

                                       1
─────────────────────────────────────────────────────────────
       COMPLAINT FOR DECLARATORY RELIEF, QUIET TITLE, EQUITABLE SUBROGATION

Plaintiff FEDERAL NATIONAL MORTGAGE ASSOCIATION ("Fannie Mae") alleges as follows:

## JURISDICTION AND VENUE

1.      This Court has subject matter jurisdiction over the matter pursuant to 28 U.S.C. § 1331 because the claims asserted arise under the laws of the United States of America.

2.      This Court has subject matter jurisdiction over the matter pursuant to 28 U.S.C. § 1332(a) because Plaintiff is completely diverse from the Defendants – i.e., citizens of different states, and the amount in controversy exceeds $75,000.00.

3.      The amount in controversy exceeds $75,000.00 because the value of the real property that is the subject of Plaintiff's claim exceeds $75,000.00. In addition, the amounts due under the Fannie Mae's loan relating to the real property is in excess of $75,000.00.

4.      This action concerns the parties' rights to real property located at 9941 Saddleback Drive, Lakeside, CA 92040, San Diego County ("Property"). The Property is assigned Assessor's Parcel Number ("APN") 395-292-32. The legal description for the Property is as follows:

> ALL THAT CERTAIN REAL PROPERTY SITUATED IN THE COUNTY OF SAN DIEGO, STATE OF CALIFORNIA, DESCRIBED AS FOLLOWS:
>
> LOT 44 OF LAKESHORE TERRACE UNIT NO. 1, IN THE COUNTY OF SAN DIEGO, STATE OF CALIFORNIA, ACCORDING TO MAP THEREOF NO. 6939, FILED IN THE OFFICE OF THE COUNTY RECORDER OF SAN DIEGO COUNTY, MAY 26, 1971.

(See **Exhibit 1** attached hereto and incorporated herein by reference.)

5.      Accordingly, venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391(b)(1)-(2) because a substantial part of the events or omissions giving rise to these claims occurred in this district and the Property that is the subject of this action is situated in this district.

## INTRODUCTION

6.      This is an action for declaratory judgment, quiet title, and equitable subrogation. Plaintiff seeks judgment that, among other things, any foreclosure by Defendants under a deed of

COMPLAINT FOR DECLARATORY RELIEF, QUIET TITLE, EQUITABLE SUBROGATION

trust is invalid, void, and of no effect because, among other things, the Defendants' deed of trust was already paid off and because federal law preempts any state foreclosure law.

7.     Notwithstanding any contrary California law, a federal statute prevents a foreclosure sale from extinguishing a lien owned by Fannie Mae while Fannie Mae is under the conservatorship of the Federal Housing Finance Case 2:17-cv-02521-JAD-VCF Document 1 Filed 09/28/17 Page 2 of 17 Agency ("FHFA" or "Conservator").

8.     In July 2008, Congress passed the Housing and Economic Recovery Act of 2008 ("HERA"), Pub. L. No. 110-289, 122 Stat. 2654, codified at 12 U.S.C. § 4511 *et seq.* HERA includes an array of broad privileges, immunities, and exemptions from otherwise applicable law that facilitates the Conservator's exercise of its statutory powers. Relevant to this case, 12 U.S.C. § 46170)(3) mandates that while Fannie Mae is in conservatorship, none of its property "shall be subject to ... foreclosure[] without the consent of [FHFA]."

9.     The Conservator has not consented to the extinguishment of Fannie Mae's interest in this property that is the subject of foreclosure sale. Thus, any foreclosure sale cannot extinguish Fannie Mae's deeds of trust encumbering the Property.

## THE PARTIES

10.    Plaintiff is a United States government-sponsored enterprise (GSE). Plaintiff is deemed a citizen of the District of Columbia for jurisdictional purposes in civil cases. 12 U.S.C. § 1717(a)(2)(B). Plaintiff provides stability and liquidity to the United States housing and mortgage markets by establishing secondary mortgage market facilities for residential mortgages. *See* 12 U.S.C. § 1716.

11.    Plaintiff is informed, believe, and thereon alleges that defendant GULF HARBOUR INVESTMENTS CORPORATION ("Gulf Harbour") is a Delaware corporation. Plaintiff is informed, believe, and thereon alleges that Gulf Harbour is the current beneficiary of a deed of trust recorded in the Official Records for the County of San Diego ("Official Records") on December 5, 2005, as Instrument #2005-1044349 ("Subject DOT").

1         12.     Plaintiff is informed, believe, and thereon alleges that defendant AFFINIA

2   DEFAULT SERVICES, LLC ("Affinia") is Florida limited liability company registered to do

3   business in the State of California. Affinia is conducting the foreclosure under the Subject DOT.

4         13.     Plaintiff is informed, believe, and thereon alleges that defendants named herein as

5   "All Persons Unknown Claiming Any Legal Or Equitable Right, Title, Estate, Lien, Or Interest In

6   The Property Described In The Complaint Adverse To Plaintiff's Title, Or Any Cloud Upon

7   Plaintiff's Title Thereto" ("Unknown Defendants") are unknown to Plaintiff. Each of the Unknown

8   Defendants (including any person who may claim an interest via intestate succession) claim some

9   right, title, estate, lien, or interest in the Property adverse to Plaintiff's title, and each of their claims

10  constitute a cloud on Plaintiff's title to the Property.

11        14.     Plaintiff is informed, believe, and thereon alleges that defendants sued herein as Does

12  1 through 50, inclusive ("Doe Defendants") (collectively with Gulf Harbour, Affinia, and the

13  Unknown Defendants, the "Defendants"), are sued by such fictitious names because Plaintiff is

14  unaware of the true names and capacities of said Doe Defendants. Plaintiff will amend its operative

15  complaint to reflect their true names when they are ascertained. Plaintiff is informed, believes, and

16  thereon alleges that said Doe Defendants are responsible for the acts, events, and circumstances

17  alleged herein, or are interested parties to this action, who claim an interest in the Property.

18        15.     Plaintiff is informed, believe, and thereon alleges that each of the Defendants were

19  the agent(s), servant(s), employee(s), or co-conspirator(s) of each of the other Defendants. At all

20  times mentioned herein, each of the Defendants were acting pursuant to said agency, authority,

21  employment, and conspiracy, and with authority, permission, consent or ratification of each other

22  Defendant. Plaintiffs are informed, believe, and thereon allege that each of the Defendants are

23  responsible in some manner for the acts, conduct, and omissions herein alleged.

24                                         **FACTUAL ALLEGATIONS**

25        16.     Plaintiff is informed, believe, and thereon alleges that on or about February 20, 2003,

26  Adam Ontiveros and Melissa Ontiveros, husband and wife as joint tenants (together, "Ontiveros")

27  purchased the Property and obtained title to the Property pursuant to a grant deed recorded on

28  February 20, 2003, in the Official Records of the County Recorder's Office for the County of San

4

Diego ("Official Records"). A true and correct copy of the recorded grant deed is attached hereto and incorporated herein by reference as **Exhibit 2**.

17.    Plaintiff is informed, believe, and thereon alleges that in connection with purchasing the Property, Ontiveros obtained a loan in the original principle amount of $252,600.00 ("Senior Purchase Money Loan"), the repayment of which was secured by a deed of trust recorded on February 20, 2003 ("Senior Purchase Money DOT") in the Official Records against title to the Property. A true and correct copy of the recorded Senior Purchase Money DOT is attached hereto and incorporated herein by reference as **Exhibit 3**.

18.    Plaintiff is informed, believe, and thereon alleges that in addition, Ontiveros obtained a second loan in the original principle amount of $63,200.00 ("Junior Purchase Money Loan"), the repayment of which was secured by a deed of trust also recorded on February 20, 2003 ("Junior Purchase Money DOT") in the Official Records against title to the Property. A true and correct copy of the recorded Junior Purchase Money DOT is attached hereto and incorporated herein by reference as **Exhibit 4**.

19.    Plaintiff is informed, believe, and thereon alleges that in or about April, 2004, Ontiveros obtained a refinance of $375,000.00 from First Federal Bank of California, the repayment of which was secured by a deed of trust recorded on April 1, 2004 ("First Federal DOT") in the Official Records against title to the Property. A true and correct copy of the recorded First Federal DOT is attached hereto and incorporated herein by reference as **Exhibit 5**.

20.     Plaintiff is informed, believe, and thereon alleges that the proceeds of the First Federal refinance paid off, among other things, the Senior Purchase Money loan. As a result, the Senior Purchase Money DOT was reconveyed on or about April 14, 2004. A true and correct copy of the recorded reconveyance of the Senior Purchase Money DOT is attached hereto and incorporated herein by reference as **Exhibit 6**.

21.    Plaintiff is informed, believe, and thereon alleges that the proceeds also paid off, among other things, the Junior Purchase Money Loan. As a result, the Junior Purchase Money DOT was reconveyed on or about April 14, 2004. A true and correct copy of the recorded reconveyance of

COMPLAINT FOR DECLARATORY RELIEF, QUIET TITLE, EQUITABLE SUBROGATION

1  the Junior Purchase Money DOT is attached hereto and incorporated herein by reference as **Exhibit**

2  **7**.

3        22.     Plaintiff is informed, believe, and thereon alleges that in or about May, 2005,

4  Ontiveros obtained a home equity line of credit of $35,000.00 from San Diego County Credit Union,

5  the repayment of which was secured by a deed of trust recorded on May 3, 2005 ("SDCC DOT") in

6  the Official Records against title to the Property. A true and correct copy of the recorded SDCC

7  DOT is attached hereto and incorporated herein by reference as **Exhibit 8**.

8        23.     Plaintiff is informed, believe, and thereon alleges that in or about August, 2005,

9  Ontiveros obtained another home equity line of credit of $65,000.00 from E-Loan, Inc. ("Subject

10  Loan"). Repayment of the Subject Loan is secured by a deed of trust recorded on August 23, 2005

11  ("Subject DOT") in the Official Records against title to the Property. A true and correct copy of the

12  recorded Subject DOT is attached hereto and incorporated herein by reference as **Exhibit 9**.

13        24.     Plaintiff is informed, believe, and thereon alleges that the proceeds of the Subject

14  Loan paid off, among other things, the SDCC loan. As a result, the SDCC DOT was reconveyed on

15  or about October 7, 2005. A true and correct copy of the recorded reconveyance of the SDCC DOT

16  is attached hereto and incorporated herein by reference as **Exhibit 10**.

17        25.     In or about late November, 2005, Ontiveros obtained a refinance of $412,000.00

18  ("Fannie Mae Loan") from Plaintiff's predecessor-in-interest, Plaza Home Mortgage, Inc. ("Plaza

19  Home"). Repayment of the Fannie Mae Loan is secured by a deed of trust recorded on December 5,

20  2005 ("Fannie Mae DOT") in the Official Records against title to the Property. A true and correct

21  copy of the recorded Fannie Mae DOT is attached hereto and incorporated herein by reference as

22  **Exhibit 11**.

23        26.     The Fannie Mae Loan paid off, among other things, the First Federal Loan and the

24  Subject Loan. This is evidenced by, among other things, a copy of the final HUD-1 ("HUD-1"),

25  which shows payoffs to First Federal and E-Loan. A true and correct copy of the HUD-1 is attached

26  hereto and incorporated herein by reference as **Exhibit 12**.

27

28

COMPLAINT FOR DECLARATORY RELIEF, QUIET TITLE, EQUITABLE SUBROGATION

27.     As a result, the First Federal DOT was reconveyed on or about December 30, 2005. A true and correct copy of the reconveyance of the First Federal DOT is attached hereto and incorporated herein by reference as **Exhibit 13**.

28.     Plaintiff is informed, believe, and thereon alleges that although the Subject Loan was paid off, E-Loan failed to reconvey the Subject DOT.

29.     Plaintiff is informed, believe, and thereon alleges that although the Subject Loan was paid off, E-Loan refuses to reconvey the Subject DOT.

30.     As part of the consideration for the Fannie Mae Loan, Ontiveros pledged the Property as collateral for the repayment of the Fannie Mae Loan. Plaza Home, Fannie Mae's predecessor-in-interest, agreed to provide the Fannie Mae Loan to Ontiveros only if, among other things, (a) all existing lien(s) were paid off and released, and (b) the Fannie Mae Loan is secured by a lien against title to the Property in senior, first lien position pursuant to the recording of a deed of trust. Accordingly, Ontiveros executed and delivered to Plaza Home the Fannie Mae DOT, which was recorded in the Official Records against title to the Property.

31.     Plaintiff is informed, believe, and thereon alleges that in addition to the Fannie Mae DOT, Ontiveros executed and delivered to Plaza Home a promissory note dated November 29, 2005, in the original principal amount of $412,000.00 ("Note," collectively with the Fannie Mae DOT and other loan documents, the "Loan Documents"). Plaintiff is in possession of the original Note.

32.     Plaintiff is informed, believe, and thereon alleges that on or about July 21, 2011, a Corporate Assignment of Deed of Trust was recorded in the Official Records to provide notice of the assignment of the Subject Loan and Subject DOT to E*Trade Bank. A true and correct copy of the assignment is attached hereto and incorporated herein by reference as **Exhibit 14**.

33.     Plaintiff is informed, believe, and thereon alleges that on or about December 31, 2018, a second Assignment of Deed of Trust was recorded in the Official Records to provide notice of the assignment of the Subject Loan and Subject DOT to Gulf Harbour. Thus, Gulf Harbour is the beneficiary under the Subject DOT (which improperly remains of record against title to the Property). A true and correct copy of the assignment is attached hereto and incorporated herein by reference as **Exhibit 15**.

7

34.     Fannie Mae acquired the interests under the Fannie Mae Loan and Fannie Mae DOT pursuant to assignments of deeds of trust recorded on October 4, 2012, and November 5, 2012. True and correct copies of the assignments are attached hereto and incorporated herein by reference as **Exhibit 16** and **Exhibit 17**.

35.     Plaintiff is informed, believe, and thereon alleges that on or about February 28, 2020, Defendants recorded or caused to be recorded a notice of default and election to sell under deed of trust ("Notice of Default") with regard to Subject DOT. A true and correct copy of the Notice of Default is attached hereto and incorporated herein by reference as **Exhibit 18**.

36.     Plaintiff is informed, believe, and thereon alleges that Defendants intend on proceeding with foreclosing under the Subject DOT ("Foreclosure").

## FIRST CAUSE OF ACTION

### (DECLARATORY RELIEF AGAINST ALL DEFENDANTS [12 U.S.C. § 4617(j)(3)])

37.     Plaintiff realleges and incorporates by reference herein the allegations of Paragraphs 1 through 36, above, as though fully set forth herein.

38.     Pursuant to 28 U.S.C. § 2201, this Court is empowered to declare the rights and legal relations of the parties in this matter, both generally and in relation to Foreclosure proceedings and the Property.

39.     Fannie Mae is the current beneficiary under the Fannie Mae Loan and Fannie Mae DOT.

40.     The Fannie Mae DOT is a first secured interest in the Property.

41.     Gulf Harbour claims an interest in the Property that is adverse to Plaintiffs pursuant to the Subject DOT.

42.     FHFA is an agency of the federal government of the United States and is also the Conservator for Fannie Mae.

43.     Upon its appointment, the Conservator succeeded by law to all of Fannie Mae's "rights, titles, powers, and privileges." 12 U.S.C. § 4617 (b)(2)(A)(i).

44.     During the Conservatorship, "no property of [FHFA] shall be subject to levy, attachment, garnishment, foreclosure or sale without the consent of the [FHFA], nor shall any involuntary lien attach to the property of [FHFA]." 12 U.S.C. § 4617(j)(3).

45.     Fannie Mae's secured interest in the Property pursuant to the Fannie Mae DOT is property of the FHFA.

46.     Applying state law in a manner that extinguishes Fannie Mae's first position Deed of Trust violates 12 U.S.C. § 4617(j)(3).

47.     12 U.S.C. § 4617(j)(3) preempts any state law that would permit a foreclosure on a lien to extinguish a first secured interest of Fannie Mae while it is under FHFA's conservatorship. FHFA did not consent to any extinguishment of the Fannie Mae DOT.

48.     Pursuant to 12 U.S.C. § 4617(j)(3), the Foreclosure cannot extinguish Fannie Mae's first secured interest.

49.     Plaintiff is entitled to a declaration that 12 U.S.C. § 4617(j)(3) preempts any state law that would permit a foreclosure sale to extinguish a first secured interest of Fannie Mae while it is under FHFA's conservatorship.

50.     Plaintiff is also entitled to a declaration that a Foreclosure conducted by Defendants cannot affect or extinguish the Fannie Mae DOT.

51.     Plaintiff was compelled to retain the undersigned counsel to represent it in this matter and have and will continue to incur attorney's fees and costs.

## SECOND CAUSE OF ACTION

### (DECLARATORY RELIEF AGAINST ALL DEFENDANTS [SUBJECT DOT IS UNENFORCEABLE])

52.     Plaintiff realleges and incorporates by reference herein the allegations of Paragraphs 1 through 51, above, as though fully set forth herein.

53.     Pursuant to 28 U.S.C. § 2201, this Court is empowered to declare the rights and legal relations of the parties in this matter, both generally and in relation to Foreclosure proceedings and the Property.

54.     Fannie Mae has a secured, senior lien interest in the Property superior to any other encumbrance of record against title to the Property.

55.     On or about December 5, 2005, proceeds from the Fannie Mae paid off, among other things, the Subject Loan as evidenced by, among other things, the final HUD-1.

56.     Plaintiff seeks a judicial determination that, pursuant to the payoff of the Subject Loan on or about December 5, 2005, Defendants have no right, estate, title, lien, and/or interest whatsoever in the Property or any part thereof.

57.     Plaintiff further seeks a judicial determination that pursuant to the payoff of the Subject Loan on or about December 5, 2005, Defendants must reconvey the Subject DOT.

58.     Alternatively, judgment should be entered declaring the Subject DOT void and of no effect, and unenforceable.

59.     A judicial declaration is necessary and appropriate at this time under the circumstances in order that Plaintiff may ascertain its legal or equitable right, title, estate, lien, or interest in the Property.

**THIRD CAUSE OF ACTION**

**(FOR QUIET TITLE AGAINST ALL DEFENDANTS)**

60.     Plaintiff realleges and incorporates by reference herein the allegations of Paragraphs 1 through 59, above, as though fully set forth herein.

61.     The legal description, common address, and APN for the Property are listed above.

62.     Fannie Mae has a valid, senior, secured lien against title to the Property pursuant to, among other things, the Fannie Mae DOT, the Loan Documents, and Ontiveros' covenants.

63.     Plaintiff seeks to quiet title with regard to its interests in the Property. Specifically, Fannie Mae seeks a judicial determination that the secured lien against title to the Property created by the recorded Fannie Mae DOT encumbers title to the Property in first lien position.

64.     Plaintiff additionally seeks a judicial determination that the Subject DOT has no force or effect and is unenforceable because the Subject Loan was paid off in full on or about December 5, 2005, from the proceeds of the Fannie Mae Loan as evidenced by, among other things, the final HUD-1.

COMPLAINT FOR DECLARATORY RELIEF, QUIET TITLE, EQUITABLE SUBROGATION

65.     Plaintiff is informed, believe, and thereon alleges that each of the Defendants claims a legal or equitable right, title, estate, lien, or interest adverse to Plaintiffs' legal or equitable right, title, estate, lien, or interest in the Property.

66.     Plaintiff seeks to quiet title in favor of Fannie Mae and against each of the Defendants, and a determination that each of the Defendants have no right, estate, title, lien, and/or interest in the Property.

### FOURTH CAUSE OF ACTION

### (EQUITABLE SUBROGATION TO IMPRESS EQUITABLE LIEN AGAINST ALL DEFENDANTS)

67.     Plaintiff realleges and incorporates by reference herein the allegations of Paragraphs 1 through 66, above, as though fully set forth herein.

68.     Alternatively, Plaintiff seeks an equitable lien pursuant to the doctrine of equitable subrogation.

69.     Under the doctrine of equitable subrogation, an encumbrancer of real property is equitably subrogated to the rights of paid-off prior encumbrancers if:  (i) the encumbrancer paid the encumbrance to protect its own interest; (ii) the encumbrancer did not act as a volunteer, (iii) the encumbrancer paid a debt for which the encumbrancer was not primarily liable; (iv) the encumbrancer paid the entire debt; and (v) subrogation would not work any injustice to the rights of others.

70.     The proceeds of the Fannie Mae Loan were utilized to pay off, among other things, the then existing First Federal obligation in the approximate amount of $375,000.00. As a result, the First Federal DOT was reconveyed on or about December 30, 2005. A true and correct copy of the reconveyance is attached hereto and incorporated herein by reference as **Exhibit 13**.

71.     Plaintiff is informed, believe, and thereon alleges that, in turn, the proceeds of the First Federal loan were utilized to pay off the Senior Purchase Money Loan in the approximate amount of $252,600.00. As a result, a reconveyance as to the Senior Purchase Money DOT was recorded on or about April 14, 2004. A true and correct copy of the Full Reconveyance is attached hereto and incorporated herein by reference as **Exhibit 6**.

11

72.     The Fannie Mae Loan was funded to Ontiveros on the condition that, among other things, the loan proceeds were to pay off all existing liens entirely, leaving the Property free from any liens and encumbrances. In addition, the Fannie Mae loan was funded to Ontiveros on the condition that, among other things, the repayment of the Fannie Mae Loan would be secured by the Fannie Mae DOT recorded against title to the Property superior to all other liens and encumbrances.

73.     Plaza Home, Fannie Mae's predecessor-in-interest, (a) did not act as a volunteer in paying the First Federal Loan obligation owed by Ontiveros, (b) was not primarily liable for the debt, and (c) the debt owed was satisfied in full pursuant to the proceeds of the Fannie Mae Loan.

74.     Plaintiff is further informed, believes, and thereon alleges that as a consequence of the payoff in full of the First Federal Loan, which in turn paid off the Senior Purchase Money Loan, Defendants have been unjustly enriched in that, on information and belief, Defendants object to the Fannie Mae DOT encumbering title to the Property in senior position.

75.     Subrogation will not work any injustice to the rights of the parties or others if Plaintiff is subrogated to the rights of the creditors whose debts were paid (plus interest and costs according to the terms of the prior debt). Subrogation will not prejudice Defendants but place Plaintiff's equitable lien in the same priority position as the Senior Purchase Money DOT, which, on information and belief, was paid off in full pursuant to the proceeds of the First Federal Loan, which was paid off in full by the Fannie Mae Loan. The Fannie Mae Loan was funded on the condition that, among other things, it would be secured by a lien in first position against title to the Property. If Plaintiff is not allowed to equitably subrogate to the Senior Purchase Money DOT, Plaintiff will be severely prejudiced and Defendants would be unjustly enriched.

76.     To the extent that Plaintiff's senior, secured interest in the Property is not quieted in favor of Plaintiff as requested in the third cause of action noted above, Plaintiff is entitled to all of the rights, title, and interest held by the beneficiary under the Senior Purchase Money DOT— namely, a lien against title to the Property as of February 20, 2003 (the date the Senior Purchase Money DOT was recorded), in the approximate amount of $ $252,600.00 (plus applicable interest and other fees from the date of the payoff).

COMPLAINT FOR DECLARATORY RELIEF, QUIET TITLE, EQUITABLE SUBROGATION

**FIFTH CAUSE OF ACTION**

**(INJUNCTIVE RELIEF AGAINST ALL DEFENDANTS)**

77.     Plaintiff realleges and incorporates by reference herein the allegations of Paragraphs 1 through 76, above, as though fully set forth herein.

78.     On or about December 5, 2005, the Subject Loan was paid off pursuant to loan proceeds from the Fannie Mae Loan as evidenced by, among other things, the final HUD-1.

79.     Plaintiff is informed, believe, and thereon alleges that although the Subject Loan was paid off, E-Loan failed to reconvey the Subject DOT.

80.     Plaintiff is informed, believe, and thereon alleges that although the Subject Loan was paid off, E-Loan refuses to reconvey the Subject DOT.

81.     Plaintiff is informed, believe, and thereon alleges that Defendants have recorded a Notice of Default and intend on proceeding with foreclosure under the Subject DOT.

82.     Unless and until enjoined and required by order of this Court to reconvey the Subject DOT and stop the Foreclosure, Defendants may cause great and irreparable injury to Plaintiffs by, among other things, claiming an interest in the Property when the Subject Loan was paid off and foreclosing under the Subject DOT which is still of record against title to the Property in first lien position, thereby extinguishing Fannie Mae's secured interest in the Property and/or clouding title.

83.     Plaintiff has no adequate remedy at law for the potential injuries threatened by the Defendants. Moreover, Plaintiff has no ability to protect its interests in the Property in the event that the Property is sold to a bona fide purchaser.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs pray for Judgment against Defendants, and each of them, as follows:

1.     A declaration that 12 U.S.C. § 4617(j)(3) preempts any California state law that would permit Defendants to proceed with the Foreclosure under the Subject DOT to extinguish the property interest of Fannie Mae while it is under FHFA conservatorship;

2.     A declaration that the Foreclosure under the Subject DOT will not extinguish the Fannie Mae DOT;

3.      A judicial determination and a declaration that each of the Defendants have no right, estate, title, lien, or interest whatsoever in the Property;

4.      A judicial determination and declaration that the secured lien against title to the Property created by the recorded Fannie Mae DOT encumbers title to the Property in first lien position;

5.      A judicial determination and declaration that the Subject DOT has no force or effect and is unenforceable because the Subject Loan was paid off in full on or about December 5, 2005, from the proceeds of the Fannie Mae Loan;

6.      In the alternative, a judicial determination that Plaintiff has an equitable lien against title to the Property as of February 20, 2003 (the date the Senior Purchase Money DOT was recorded), in the approximate amount of $252,600.00 (plus applicable interest and other fees from the date of the payoff);

7.      That a certified copy of the Judgment may be recorded in the Official Records;

8.      For a temporary, preliminary, and permanent injunction requiring Defendants to reconvey the Subject DOT and enjoining the Foreclosure;

9.      For reasonable attorneys' fees as may be allowed by contract, statute, and/or law;

10.     For costs of suit incurred herein; and

11.     For such other and further relief as this Court may deem just and proper.

Respectfully submitted,

DATED: April 7, 2021                         **FIDELITY NATIONAL LAW GROUP**

By: ___*/s/ Sheri M. Kanesaka*_____
         SHERI M. KANESAKA
         Attorneys for Plaintiff

COMPLAINT FOR DECLARATORY RELIEF, QUIET TITLE, EQUITABLE SUBROGATION